# EXHIBIT A

PARK COUNTY CLERK
OF DISTRICT COURT
MOLLY BRADBERRY

2020 MAR 3 PM 3 45

FILED
BY _____
DEPUTY

Daniel J. Colvin
&
Cena M-M Tecca

81 Old Clyde Park Road

Livingston, MT 59047

406-223-1342

Plaintiff Pro Se

MONTANA _____6th_____ JUDICIAL DISTRICT COURT,

_____Park_____ COUNTY

Daniel J. Colvin          )
&                         )
Cena M-M Tecca            )      **Your Cause No.** DV-20-32
_____,    )
                          )
            Plaintiff,    )
                          )      **Complaint**
      vs.                 )
Lakeview Loan Servicing LLC )
_____,    )
                          )
            Defendant.    )

COMES NOW the Plaintiff, Daniel J. Colvin & Cena M-M Tecca, respectfully states the

following:

1. In God WE Trust/USA Inc. See attached (Exhibit A)

2. FDCPA Violation $1000.00 See attached (Exhibit B) Equifax Credit Report 2-28-20

3. FCRA Violation $1000.00 See attached (Exhibit C) Equifax Credit Report 2-28-20

4. Montana State Statutes for FDCPA Violations (Exhibit D)

THEREFORE the Plaintiff respectfully asks this court to grant the following:

1. The Account #0041970013 and Full Amount of Debt that is Owed being $271,541 including Interest that is $264,331, Totaling in the Amount of $535,872 to be Dismissed Immediately, and any Fines or Penalties that have Accrued.

2. The Debt to be Removed from all Credit Bureaus (i.e. Experian, TransUnion, Equifax, Innovis, FICO, etc.) for both Plaintiffs Immediately.

3. Plaintiffs Request to be **awarded $1,000 for Each Violation.**

B y
(Your signature)
By: Daniel J. Colvin
(Print your name)
3 - 3 - 20
(Date)

(Your signature)
Pena m-m Tecca
(Print your name)
3-3-20
(Date)

State of Montana                               )
                                               : ss
County of _Park_                               )

By _Daniel S. Colvin_____, being first duly sworn, upon oath, deposes and says as follows:
I am the Plaintiff in the foregoing Complaint. I have read the foregoing Complaint and the
facts of the matter contained herein are true, correct and complete to the best of my knowledge
and belief.

By _Cena M-M Tecca_____, being first duly sworn, upon oath, deposes and says as follows:
I am the Plaintiff in the foregoing Complaint. I have read the foregoing Complaint and the
facts of the matter contained herein are true, correct and complete to the best of my knowledge
and belief.

_____          _____
          Plaintiff                          Plaintiff

Daniel J Colvin & Cena M Tecca
Signed and sworn to (or affirmed) before me this __3__ day of __March__, 20 _20_

_____
(Signature of notary)

_____
(Printed name of notary public)

Notary public for the state of _____

Residing at: _____

My commission expires: _____

**Complaint**                                                    **Page 3**

**1. In God We Trust/ USA Inc. – This is the text for the in God We Trust/USA Inc. filing:**

Defendant is not Licensed to do business as required by Montana Code Annotated 2019 Title 30. Trade and Commerce Chapter 14. Unfair Trade Practices and Consumer Protection Part 14. Montana Telemarketing Registration and Fraud Prevention Act. Defendant is not licensed by the state of Montana and is not Registered at the Secretary of State of Montana and has no registered agent in Montana all of which prove the defendant only engages in illegal activity in the state of Montana. Defendant is acting as an unlicensed and unregistered agent of the In God We Trust USA Inc. (see attached exhibit A, B.) Which is itself (In God we trust/USA Inc.) Not licensed to conduct business in Montana nor is it registered at the Montana Secretary of State either. Simply put, "dollars" are actually In God We Trust/USA Inc. Promissory notes and are used illegally in the state of Montana under all circumstances enforcing the population of the state of Montana to use In God We Trust/USA Inc. promissory notes fits the definition of domestic terrorism and slavery.

Notice to principle is notice to agent. Notice to agent is notice to principle. Any agent, to include anyone acting on Defendant's behalf, of either of these unlicensed entities is equally liable for their principal's actions. Defendant has no license to originate, collect or issue an In God We Trust/USA Inc. promissory notes in the state of Montana colloquially Known as "dollars" Which are ambiguous proving collusion and conspiracy at all levels of government and banking as all banking uses these illegal business practices which are nothing more than illegal financial pyramid scheme developed between Defendant an In God We Trust /USA Inc. this claim provides ample evidence for the immediate arrest and conviction of all officers of Defendant an In God We Trust /USA Inc. on charges of domestic terrorism and slavery. Amount of claim is $33 for illegally collected invalidated debt against the Plaintiff. On the record, Plaintiff requests the full amount of the domestic terrorism fine of $1,000,000 to be awarded to a charity of Plaintiff's choice. Anyone in the judicial system that sees this evidence and does not stop this continuous slavery and domestic terrorism becomes equally liable for Defendant's actions both personally and professionally and themselves become guilty of domestic terrorism and slavery.

Exhibit A

# In God We Trust/U.S.A. Inc.

2415 W Seybert Philadelphia PA 19121

Home (/) /   Philadelphia (/city/3/philadelphia,1)
/  In God We Trust/U.S.A. Inc.

SPONSORED SEARCHES

| best lawyer in philadelphia | cheapest way to get to philadelphia | house prices in philadelph |
| old photos of south philadelphia | trust 16904 | manufacturing indust |

## Company Info

In God We Trust/U.S.A. Inc. company type is Business Corporation. Company Number assigned to this business is 3122935 and state of formation is Pennsylvania.

This company business address is 2415 W Seybert Philadelphia PA 19121. You can find this business by geo coordinates: 39° 59' 33.6" N , 75° 10' 32.2" W.

In God We Trust/U.S.A. Inc. was incorporated on Friday 7th February 2003, so this company age is seventeen years, twenty-three days. Current company status of this company is Active.

There are one officers in this business. They are: Clifton Horsey (President).

## In God We Trust/U.S.A. Inc. on map



## Business Debts?

50,000 Business Debts Resolved.Take Back Your Business - No Surrender. Call Us Now.

Corporate Turnaround                                          OPEN



## People

Owner

President Name

Treasurer Name

## QR Code

Scan QR Code below with qrcode app on your smarthpone to get In God We Trust/U.S.A. Inc. data.



In GodWe Trust/U.S.A. Inc.

SPONSORED SEARCHES

| best lawyer in philadelphia | cheapest way to get to philadelphia | house prices in philadelph |
| old photos of south philadelphia | manufacturing industry | quick cash philadelph |

## Key Data

| | |
|---|---|
| Name | In God We Trust/U.S.A. Inc. |
| State of Formation | PA |
| Company Id | 3122935 |
| Company Type | Business Corporation |
| Company Status | Active |
| Incorporation Date | 2003-02-07 |
| Company Age | seventeen years, twenty-three days |
| Citizenship | Domestic |
| Previous Name | - |
| Termination Date | - |
| Dissolution Date | - |
| Effective Date | - |

## Address

### Principal Address

2415 W Seybert Philadelphia PA 19121
United States

**GPS Coordinates**
Latitude: 39° 58' 33.6" N
Longitude: 75° 10' 32.2" W

## Filings

SPONSORED SEARCHES

| best lawyer in philadelphia | cheapest way to get to philadelphia |
| house prices in philadelphia usa | old photos of south philadelphia |

| Id | Date Filed | Description |
|---|---|---|
| 1432143 | 2003-02-07 | Articles Of Incorporation 1 |

## Officers

| Id | Name | Title | Address |
|---|---|---|---|
| 800337 | Clifton Horsey | President | 2415 W Seybert Philadelphia PA 19121-51 |

Delete this data  (/delete/996083/in-god-we-trust-u-s-a-inc.html)

## Similar Companies

| Name | Address | Status |
|---|---|---|
| In "His" Hands Plumbing, Heating And Appliances (/company/2050321/in-his-hands-plumbing-heating-and-appliances) | Rd 3 Box 3322 Susquehanna PA 18847 | Active |
| In & Around (/company/3300788/in-around) | 314 Rose Point Rd New Castle PA 16101 | Active |

## Nearby Companies

| Name | Address | Status |
|---|---|---|
| Coalition Of African American Cultural Organizations (/company/999472/coalition-of-african-american-cultural-organizations) | 1346 North Broad St Phila PA 19121 | Active |
| Shel-Sone' Realty Inc (/company/998802/shel-sone-realty-inc) | 1906 W Diamond St Phila PA 19121 | Active |

# 15 U.S. Code § 1692. Congressional findings and declaration of purpose

U.S. Code     Notes

### (a) ABUSIVE PRACTICES

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

### (b) INADEQUACY OF LAWS

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

### (c) AVAILABLE NON-ABUSIVE COLLECTION METHODS

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

### (d) INTERSTATE COMMERCE

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

### (e) PURPOSES

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

Case 1:20-cv-00040-SPW Document 1-1 Filed 04/06/20 Page 9 of 30

MCA Contents / TITLE 30 / CHAPTER 14 / Part 14 / 30-14-1405 Exemption...

# Montana Code Annotated 2019

TITLE 30. TRADE AND COMMERCE
CHAPTER 14. UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
Part 14. Montana Telemarketing Registration and Fraud Prevention Act

# Exemptions From Registration And Bonding

**30-14-1405. Exemptions from registration and bonding.** The registration and bonding requirements of **30-14-1404** do not apply to:

(1) any securities, commodities, or investment brokers, dealers, or investment advisers or any associates of securities, commodities, or investment brokers, dealers, or investment advisers who are subject to licensure or registration by the securities and exchange commission, the national association of securities dealers, or another self-regulatory organization, as defined by 15 U.S.C. 78(c), or by an agency of this state or any other state and who are soliciting within the scope of their license or registration;

(2) a person engaged in solicitation for a religious, charitable, political, educational, or other noncommercial purpose or a person soliciting for a domestic or foreign nonprofit corporation that is registered with the Montana secretary of state;

(3) a business-to-business sale;

(4) a person that solicits sales by periodically publishing and delivering a catalog of the person's merchandise to prospective purchasers, if the catalog:

(a) contains a written description or illustration of each item offered for sale;

(b) includes the business or home address of the person soliciting the sale;

(c) includes at least 20 pages of written material and illustrations;

(d) is distributed in more than one state; and

(e) has a circulation by mailing of not less than 150,000;

(5) a person who solicits contracts for maintenance or repair of goods previously purchased from that person or from the person on whose behalf the solicitation is made;

(6) a person soliciting a transaction regulated by the commodity futures trading commission if the person is registered or temporarily licensed with the commodity futures trading commission under the Commodity Exchange Act, Title 7, chapter 1, of the United States Code, and the person's registration or license is not expired, suspended, or revoked;

(7) a supervised financial organization or parent, subsidiary, or affiliate of a supervised financial organization;

(8) an insurer authorized to transact insurance under Title 33, chapter 2, part 1, a person licensed as an insurance producer under Title 33, chapter 17, part 2, or staff members, licensed or unlicensed, of the producer;

(9) a person soliciting the sale of services provided by a satellite or cable television system or a radio or television station authorized by the federal government or this state to provide services in this state;

(10) a telephone company or its subsidiary or agent or other business regulated by the Montana public service commission, the federal communications commission, a rural telephone cooperative or its subsidiary or agent, or a federally licensed cellular telephone or radio telecommunication service provider;

(11) a person soliciting business from consumers that have an existing business relationship with or have previously purchased from the business enterprise for which the person is soliciting;

(12) a person operating a retail business establishment under the same name as that used in the solicitation and:

(a) the products or services are displayed and offered for sale at the business establishment; and

(b) a majority of the person's business involves the consumer obtaining the products or services at the business establishment;

(13) a person soliciting for the sale of a magazine or newspaper of general circulation;

(14) an issuer or a subsidiary of an issuer that is authorized to offer securities for sale in this state;

(15) a book, video, record, or multimedia club, contractual plan, or arrangement:

(a) under which the seller provides the consumer with a form that the consumer may use to instruct the seller not to ship the offered merchandise;

(b) that is regulated by the federal trade commission regulation, 16 CFR 425, concerning the use of negative option plans by sellers in commerce; or

(c) that provides for the sale of books, videos, records, multimedia products, or other goods that are not covered by subsection (15)(a) or (15)(b), including continuity plans, subscription arrangements, standing order arrangements, single sales, supplements, or series arrangements under which the seller periodically ships merchandise to a consumer who has consented in advance to receive the merchandise on a periodic basis;

(16) a real estate salesperson or broker licensed by this state;

(17) a person that has provided telemarketing sales services under the same name and derives 50% of gross telemarketing sales revenue from contracts with persons exempted under this section from registration requirements;

(18) a person soliciting the sale of food or food products if the solicitation is not intended to and does not result in a sale in excess of $100 to a single address.

**History:  En. Sec. 5, Ch. 342, L. 1999.**

# 15 U.S. Code § 1692k. Civil liability

U.S. Code    Notes

**(a) AMOUNT OF DAMAGES** Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

**(1)** any actual damage sustained by such person as a result of such failure;

**(2)**

**(A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

**(B)** in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

**(3)** in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

**(b) FACTORS CONSIDERED BY COURT** In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—

**(1)** in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of

such noncompliance, and the extent to which such noncompliance was intentional; or

**(2)** in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

## **(c) INTENT**

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

## **(d) JURISDICTION**

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

## **(e) ADVISORY OPINIONS OF BUREAU**

No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

(Pub. L. 90–321, title VIII, § 813, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 881; amended Pub. L. 111–203, title X, § 1089(1), July 21, 2010, 124 Stat. 2092.)

▷ ✕

**Pro Bono Attorneys Near You - Free Attorneys Near You**

OPEN

Find Free Legal Attorneys Near You. Find Out How! topattorneysnearby.com/Pro+Bono

# Fair Debt Collection Practices Act

## Background

A creditor may seek to collect an outstanding debt in several ways. However, because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692, in 1978, Congress enacted the Fair Debt Collection Practices Act (FDCPA), codified in 15 U.S. Code Subchapter V.

## Overview

The FDCPA provides debtors with a means for challenging payoff demands, and for determining the validity and accuracy of asserted debts. 15 U.S.C. §1692g. Perhaps more importantly, however, the FDCPA establishes ethical guidelines for the collection of consumer debts. Congress targeted such behavior because it found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. " 15 U.S.C. §1692.

### Prohibitions on Debt Collector Action

"The FDCPA broadly prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.' 15 U.S.C. § 1692e." The statute enumerates several examples of such practices, 15 U.S.C. § 1692e, as well as several examples of unfair practices, 15 U.S.C. § 1692f. The FDCPA also provides, for example, that debt collectors may not harass or annoy debtors, may not threaten debtors with arrest, and may not threaten legal action unless litigation actually is being contemplated. 15 U.S.C. §1692d.

The FDCPA prohibits debt collectors from contacting debtors before 8:00 a.m. or after 9:00 p.m., but it does not prohibit debt collectors from contacting debtors on holidays or weekends unless they know or have reason to know that doing so would be "inconvenient" to the debtor. The FDCPA even gives debtors the right to demand that the third-party debt collector terminate all further communications, but the demand must be in writing. 15 U.S.C. § 1692c.

The FDCPA prohibits third-party debt collectors from contacting a debtor directly if they know the debtor is represented by counsel. 15 U.S.C. § 1692b.

Exhibit B

Requirements for Debt Collector Action

Additionally, in their first communication with the consumer, debt collectors are required "to notify debtors about their ability to challenge the validity of a debt and to provide other basic information.." *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 653 (S.D.N.Y. 2006) (citing 15 U.S.C. §1692g). This includes informing the debtor of his or her right to ask the collection agency to "validate" the debt.

Enforcement

In addition to administrative enforcement (15 U.S.C. § 1692l), the FDCPA provides for private rights of action against debt collectors, and permits debtors to recover actual damages, statutory damages, and attorneys' fees and costs for violations of its terms. 15 U.S.C. § 1692k.

State Application

Preliminarily, the FDCPA generally applies only to third party debt collectors; the statutory scheme was not intended to cover the conduct of the original creditor. However, some states, such as California, have enacted consumer protection statutes that provide broader coverage than the FDCPA, and they may include the conduct of the original creditor within their sweep. The FDCPA permits such state laws. 15 U.S.C. § 1692n.

Further Reading

For more on the FDCPA, see this University of Berkeley Law Review article, this Brooklyn Law Review article, and this St. John's University Law Review article.

- wex
  - COMMERCE
  - commercial activities
  - consumer protection
  - finance
  - financial services
  - commercial law
  - LIFE EVENTS
  - financial events
  - money and financial problems
  - wex articles
  - wex backgrounders
- Keywords
  - bankruptcy
  - DEBT
  - DEBT COLLECTOR
  - Fair Debt Collection Practices Act

# 15 U.S. Code § 1692g. Validation of debts

U.S. Code    Notes

**(a) NOTICE OF DEBT; CONTENTS** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) DISPUTED DEBTS**
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original

creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### (c) ADMISSION OF LIABILITY

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

### (d) LEGAL PLEADINGS

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

### (e) NOTICE PROVISIONS

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

(Pub. L. 90–321, title VIII, § 809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006.)

# § 3-104. NEGOTIABLE INSTRUMENT.

(a) Except as provided in subsections (c) and (d), **"negotiable instrument"** means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

(b) **"Instrument"** means a negotiable instrument.

(c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.

(d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this Article.

(e) An instrument is a **"note"** if it is a promise and is a **"draft"** if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.

(f) **"Check"** means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."

(g) **"Cashier's check"** means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.

(h) **"Teller's check"** means a draft drawn by a bank (i) on another bank, or (ii) payable at or through a bank.

(i) **"Traveler's check"** means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument.

(j) "**Certificate of deposit**" means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

‹ § 3-103. DEFINITIONS.   up § 3-105. ISSUE OF INSTRUMENT. ›

# § 3-501. PRESENTMENT.

(a) **"Presentment"** means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

(b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:

(1) Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.

(2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

(3) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary indorsement, or (ii) refuse payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

(4) The party to whom presentment is made may treat presentment as occurring on the next business day after the day of presentment if the party to whom presentment is made has established a cut-off hour not earlier than 2 p.m. for the receipt and processing of instruments presented for payment or acceptance and presentment is made after the cut-off hour.

‹ PART 5. DISHONOR up § 3-502. DISHONOR. ›

# credit karma

Reported as of Feb 27, 2020

## Daniel Colvin's Credit Report

Provided by **EQUIFAX**

## Overview



| Your Credit Score | Account Mix | |
| --- | --- | --- |
| **570** Needs Work | Credit Cards | 14 |
| | Real Estate | 0 |
| | Auto | 0 |
| | Student | 3 |
| | Other Loans | 1 |
| | Total Accounts: | 18 |

Employment Information

As of **Feb 27, 2020 (latest)**, you had no employment information reported on your credit report.

## Accounts

**LOANCARE SERVICING C**                                                                                   **$271,541**

| Account Details | | Payment History |
| --- | --- | --- |
| Last Reported | **Feb 03, 2020** | Latest Status: Current |
| Creditor Name | **LOANCARE SERVICING C** | 2020 ✓ |
| Account Type | **Manufactured Housing** | 2019 ᵁ ✓ ✓ ✓ ✓ ✓ ✓ ✓ ✓ |
| | | J F M A M J J A S O N D |
| Account Status | **Open** | ᵁ **Unknown** |
| Opened Date | **Apr 05, 2019** | Creditor Contact Details |
| Closed Date | -- | |
| Limit | -- | LOANCARE SERVICING C |
| Term | **360 Months** | 0 INTERSTATE CORPORATE CTR |
| Monthly Payment | **$1,536** | NORFOLK, VA 23502-4005 |
| Responsibility | **Joint Account** | (757) 892-1700 |
| Balance | **$271,541** | |
| Highest Balance | **$275,000** | |
| Payment Status | **Current** | |
| Worst Payment Status | -- | |
| Date of Last Payment | **Feb 01, 2020** | |
| Amount Past Due | -- | |
| Times 30/60/90 Days Late | **0/0/0** | |
| Remarks | **Fixed rate** | |

# Fair Credit Reporting Act (FCRA)

Legislation that regulates both consumer reporting agencies and consumer reports. It applies to information reported on individuals concerning their personal lives such as: information collected, used, or expected to be used to evaluate eligibility for credit, insurance,  and employment; assessment of risks and review of consumer accounts; certain government licenses or benefits and determinations regarding child support; other business transactions involving a consumer in his or her role as consumer.

- wex
    - COMMERCE
    - commercial activities
    - banking

Exhibit C

# 15 U.S. Code § 1692g. Validation of debts

U.S. Code    Notes

**(a) NOTICE OF DEBT; CONTENTS** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

   **(1)** the amount of the debt;

   **(2)** the name of the creditor to whom the debt is owed;

   **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

   **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

   **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) DISPUTED DEBTS**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original

creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### (c) ADMISSION OF LIABILITY
The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

### (d) LEGAL PLEADINGS
A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

### (e) NOTICE PROVISIONS
The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

(Pub. L. 90–321, title VIII, § 809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006.)

## Google Chrome
Chrome Safe Browsing will protect you from malicious sites. Google Chrome

DOWNLOAD

# § 3-104. NEGOTIABLE INSTRUMENT.

(a) Except as provided in subsections (c) and (d), **"negotiable instrument"** means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

(b) **"Instrument"** means a negotiable instrument.

(c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.

(d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this Article.

(e) An instrument is a **"note"** if it is a promise and is a **"draft"** if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.

(f) **"Check"** means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."

(g) **"Cashier's check"** means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.

(h) **"Teller's check"** means a draft drawn by a bank (i) on another bank, or (ii) payable at or through a bank.

(i) **"Traveler's check"** means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument.

(j) **"Certificate of deposit"** means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

‹ § 3-103. DEFINITIONS. up § 3-105. ISSUE OF INSTRUMENT. ›

# § 3-501. PRESENTMENT.

(a) **"Presentment"** means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

(b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:

(1) Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.

(2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

(3) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary indorsement, or (ii) refuse payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

(4) The party to whom presentment is made may treat presentment as occurring on the next business day after the day of presentment if the party to whom presentment is made has established a cut-off hour not earlier than 2 p.m. for the receipt and processing of instruments presented for payment or acceptance and presentment is made after the cut-off hour.

‹ PART 5. DISHONOR up § 3-502. DISHONOR. ›

▷ ✕:

## Listen For A Change

Your first book is on us and always yours to keep. Listen anytime, anyplace.
Audible

DOWNLOAD

# credit karma

Reported as of Feb 27, 2020

## Daniel Colvin's Credit Report

Provided by **EQUIFAX**

## Overview



| Account Mix | |
|---|---|
| Credit Cards | 14 |
| Real Estate | 0 |
| Auto | 0 |
| Student | 3 |
| Other Loans | 1 |
| Total Accounts: | 18 |

Your Credit Score

**570**
Needs Work

Employment information

As of Feb 27, 2020 (latest), you had no employment information
reported on your credit report.

## Accounts

### LOANCARE SERVICING C

$271,541

**Account Details**

| | |
|---|---|
| Last Reported | Feb 03, 2020 |
| Creditor Name | LOANCARE SERVICING C |
| Account Type | Manufactured Housing |
| Account Status | Open |
| Opened Date | Apr 05, 2019 |
| Closed Date | -- |
| Limit | -- |
| Term | 360 Months |
| Monthly Payment | $1,536 |
| Responsibility | Joint Account |
| Balance | $271,541 |
| Highest Balance | $275,000 |
| Payment Status | Current |
| Worst Payment Status | -- |
| Date of Last Payment | Feb 01, 2020 |
| Amount Past Due | -- |
| Times 30/60/90 Days Late | 0/0/0 |
| Remarks | Fixed rate |

**Payment History**

Latest Status: Current

2020 ✓

2019 · ✓ ✓ ✓ ✓ ✓ ✓ ✓ ✓
J F M A M J J A S O N D

ᵁ **Unknown**

Creditor Contact Details

LOANCARE SERVICING C
0 INTERSTATE CORPORATE CTR
NORFOLK, VA
23502-4005
(757) 892-1700

# 15 U.S. Code § 1681n. Civil liability for willful noncompliance

U.S. Code     Notes

**(a) IN GENERAL** Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

**(1)**

**(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

**(B)** in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

**(2)** such amount of punitive damages as the court may allow; and

**(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

**(b) CIVIL LIABILITY FOR KNOWING NONCOMPLIANCE**
Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

**(c) ATTORNEY'S FEES**

Exhibit D

Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

### (d) CLARIFICATION OF WILLFUL NONCOMPLIANCE

For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.

(Pub. L. 90–321, title VI, § 616, as added Pub. L. 91–508, title VI, § 601, Oct. 26, 1970, 84 Stat. 1134; amended Pub. L. 104–208, div. A, title II, § 2412(a)–(c), (e)(1), Sept. 30, 1996, 110 Stat. 3009–446; Pub. L. 110–241, § 3(a), June 3, 2008, 122 Stat. 1566.)

ᗪ Ⅹ

## 3 Bureau Credit Report

View your latest Credit Scores from All 3 bureaus in 60 seconds for $0!

**OPEN**

www.freescoreonline.com

## 🧰 U.S. Code Toolbox

Law about... Articles from Wex
Table of Popular Names
Parallel Table of Authorities
How current is this?

19          34

# Montana Statute of Limitations on Debt Collection

## Montana Statute of Limitations on Debt Collection

Are you a Montana resident worried about debt? It's important to become familiar with the Montana statute of limitations on debt collections. A statute of limitations places a limit on how long after a debt is accrued that a creditor can file a lawsuit against a person. It's notable that debt collectors can pursue a debt indefinitely. However, the statute of limitations places a rigid boundary on how long creditors can use the state system to pursue that debt.

In Montana, the statute of limitations on written contracts, obligations, or liabilities is 8 years. Verbal contracts, accounts, or promises have a statute of limitation of 5 years. As for verbal obligations or liabilities that are not contracts, these have a statute of limitation of 3 years. For judgments of decrees in any U.S. court, creditors have 10 years to pursue Montana residents to collect debt. As for judgments rendered in a court not of record, this has a 6-year statute.

Of course, it's notable that in Montana, a written acknowledgment signed by the debtor or any payment on a debt serves as sufficient evidence to cause the Montana statute of limitations to start over.

**For more information on the Montana statute of limitations, <u>contact SmithMarco, P.C. here for a free consultation</u> or call us at 888-822-1777.**